

FILED
AUG 2 0 2009

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SANGMAN OH and DONG BUM SONG,<br><br>Plaintiffs,<br><br>vs.<br><br>FLOYD SWIER, LAURA LASZLO and SWIER FAMILY FARMS, L.L.C.,<br><br>Defendants. | Civ. 09- 4127<br><br>**COMPLAINT**<br>**-AND-**<br>**DEMAND FOR JURY TRIAL** |

The Plaintiffs, Sangman Oh ("Oh") and Dong Bum Song ("Song"), through their undersigned attorney, state and allege as follows in support of their Complaint:

### PARTIES

1. Oh and Song are citizens of Korea who were given a temporary green card by the United States Citizenship and Immigration Services ("USCIS") in 2006.

2. Defendant Floyd Swier ("Swier") is a citizen of South Dakota and resides in Ramona, South Dakota.

3. Defendant Laura Laszlo is a citizen of Georgia or South Dakota. Upon information and belief, Laszlo is Swier's daughter and resides in Atlanta, Georgia.

4. Defendant Swier Family Farms, LLC (Swier and Swier Family Farms will collectively be referred to as "Swier") is a limited liability company organized under the laws of South Dakota. Swier Family Farms is the general partner of Swier Dairy LLP ("the Dairy").

1

```
```
actual

## JURISDICTION & VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) as plaintiffs are citizens of Korea and the Defendants are citizens of South Dakota and Georgia and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. This action also arises under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961 et seq., and therefore this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial amount of the acts or occurrences giving rise to this action occurred in the State of South Dakota and an actual controversy pursuant to 28 U.S.C. § 2201 exists within this jurisdiction.

## FACTS

7. Oh and Song desired to obtain permanent resident status in the United States. As a result, Oh and Song entered the USCIS pilot program pursuant to 8 CFR 204.6(m) ("the EB-5 program").

8. Pursuant to the EB-5 program, Oh and Song were required to invest $500,000.00 each to establish and operate a new business in a specially designated area in the United States. Additionally, Oh and Song were required to show each investment created four full-time employee positions.

9. South Dakota's regional center qualified as a specially designated area pursuant to the EB-5 program because of South Dakota's low population.

10. Oh and Song negotiated with Swier about entering into a partnership in South Dakota to operate a dairy business. Swier and his agents were aware that maintaining a minimum of eight full time employees was necessary for Oh and Song's purposes.

11. Swier submitted a business plan that called for 11 ½ full time employees.

12. In September of 2005, Oh and Song executed a Limited Partnership Agreement (the "Agreement") with Swier. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

13. Pursuant to the Agreement, Oh and Song are limited partners in Swier Dairy, with a collective 60% of the partnership units. Swier Family Farms, LLC, through Swier, is the general partner with 40% of the partnership units.

14. Oh and Song each made a capital contribution of $500,000.00.

15. The Agreement was consistent with the intent of the parties and the business plan that had been submitted with respect to the fact that at least 8 full time employees were to be maintained by the Dairy. *See id.* at § 9.4 (e).

16. Each limited partner was to have access to all financial information, including tax information, at all reasonable times. *Id.* at § 5.2.

17. Proof of Oh and Song's investment and a copy of the business plan and minimum full time employee requirement were submitted to USCIS. USCIS approved Oh and Song's temporary petitions in 2006. As a result, Oh, Song, and their families received temporary green cards.

18. The green cards were temporary and valid for two years, at which time, USCIS would determine whether the Dairy used the investments and in fact created the number of minimum full-time employment positions.

19. Oh and Song filed petitions to remove their conditions and for permanent residence in 2008. The petitions contained documents to show Oh and Song each invested

$500,000.00. In addition, the 2007 tax filed by Swier Dairy and quarterly wage reports for the first and second quarters of 2008 was submitted.

20. The 2007 tax returns showed the Dairy paid $338,549.00 for labor hired. In addition, the 2008 quarterly wage reports provided by the Dairy to the State of South Dakota showed 8 employees working for the Dairy. The 2008 quarterly wage report is attached hereto as **Exhibit 2**.

21. USCIS requested additional documents. Specifically, USCIS requested 2008 tax filed by Swier Dairy, W-2's issued to the dairy's employees, and quarterly wage reports issued to the State of South Dakota for fourth quarter of 2008 and 1st quarter of 2009.

22. Oh and Song's attorney is Mr. Austin Kim ("Kim"), who practices law in Los Angeles, California.

23. Kim requested the additional information demanded by USCIS from Swier. Swier provided the 2008 tax returns, but refused to provide the W-2's and quarterly wage reports.

24. The 2008 tax returns showed only $4,155.00 in employee wages paid. This was significantly less than the quarterly wage reports submitted to the State of South Dakota, which showed 9 employees.

25. Kim made his regular quarterly visit to the Dairy in June of 2009. At that time, Kim asked Swier for an explanation about Swier's failure to maintain 8 full time employees and the discrepancies between the quarterly wage reports and the 2008 tax returns.

26. Swier told Kim the 2008 returns would be amended to reflect 8 minimum employees.

27. However, Swier later told Kim he would have to deal with Laszlo, who is Swier's daughter and the certified public accountant for Swier Dairy.

28. Laszlo communicated with Kim through Laszlo's attorney, Sherri Rotert ("Rotert").

29. Rotert sent an e-mail and a letter to Kim outlining three demands from Swier and Laszlo: (1) that Oh and Song pay $120,413.00 in fees associated with filing amended returns, (2) that Oh and Song sign an indemnification agreement in favor of Swier and Laszlo, holding them harmless from any actions by the IRS, USCIS, or any other person with respect to amended tax returns, and (3) that Oh and Song sign an amended partnership agreement giving Swier the option to purchase Oh and Song's partnership units for $5,000.00 ($10,000 collectively). Rotert's e-mail and letter are attached hereto as **Exhibit 3 and 4** respectively.

30. Oh and Song refused. Subsequently, Swier and Laszlo, through Rotert, proposed an amended agreement where Oh and Song would sell their partnership interests at 75% of market value.

31. Oh and Song again refused.

32. Swier now claims the Dairy was unable to afford 8 full time employees.

33. The 2008 returns, however, show the Dairy's IRS 1099's showed the Dairy hired laborers (independent contractors) and paid the laborers a total of $269,365.72.

34. Included in the 1099 payments during 2008 are six individuals who had previously been listed as employees in the quarterly wage reports. Most are relatives or friends of Swier.

35. The minimum yearly wage for a full time employee in South Dakota is $11,921.00.

36. Swier never disclosed to Oh, Song, or any of their agents or representatives that he intended to change the status of the employees to independent contractors.

37. Upon information and belief, the employees are not properly designated as independent contractors and should have been designated employees in accordance with federal law.

38. USCIS has given Oh and Song until August 29, 2009 to produce the necessary documents to proceed with their petitions.

### FIRST CAUSE OF ACTION - - BREACH OF CONTRACT
**(as to Swier individually and Swier Family farms)**

39. Paragraphs 1 through 38 are incorporated herein as if set forth in full.

40. The Agreement entered into between the parties constitutes a valid and enforceable contract.

41. Pursuant to the Agreement, Swier was obligated to use his best efforts and act in good faith in transacting partnership business, including to maintaining 8 full time employees.

42. Swier breached his contractual obligation by failing to use his best efforts to maintain 8 full time employees and failing to inform Oh and Song that Swier had unilaterally changed the employees' status to independent contractors.

43. Swier's breach was intentional, unlawful, and/or in bad faith.

44. Swier's breach has not been cured and has proximately caused Oh and Song damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION - - BREACH OF FIDUCIARY DUTY (as to Swier)

45. Paragraphs 1 through 44 are incorporated herein as if set forth in full.

46. As the general partner, Swier owed a fiduciary duty to Oh and Song to refrain from acting recklessly, intentionally, or unlawfully with respect to the conduct of the partnership business.

47. Swier also owed a fiduciary duty to Oh and Song to act honestly and fully disclose any acts or omissions which may significantly undermine the intent of the parties and the Agreement.

48. Swier breached his duty by unlawfully, intentionally, and/or in bad faith converting the employees to 1099 independent contractors.

49. Swier's conduct was fraudulent, deceitful, and committed with total disregard to Oh and Song's rights.

50. As a direct and proximate result of Swier's breach of fiduciary duty, Oh and Song have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION - - CIVIL CONSPIRACY (as to Swier and Laszlo)

51. Paragraphs 1 through 50 are incorporated herein as if set forth in full.

52. Swier and Laszlo had a meeting of the minds and conspired to have Swier breach his fiduciary duty to Oh and Song by intentionally and unlawfully converting the Dairy's employees to independent contractors and to use the employees' status as independent contractors as a means of extortion and leverage to have Oh and Song sell their partnership units at a significant and unconscionable discount.

53. Swier breached his fiduciary duty in furtherance of the conspiracy.

54. Swier and Laszlo's conduct was fraudulent, deceitful, and committed with total disregard to Oh and Song's rights.

55. As a direct and proximate result of Swier and Laszlo's civil conspiracy, Oh and Song have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION - - DECLARATORY JUDGMENT
### (as to Swier and Swier Family Farms)

56. Paragraphs 1 through 55 are incorporated herein as if set forth in full.

57. An actual controversy exists between the parties.

58. Oh and Song seek a declaratory action with respect to Oh and Song's right to expel Swier Family farms from the partnership pursuant to SDCL § 48-7A-601 (5) and to amend the tax returns to properly show eight full time employees.

59. Oh and Song further seek a declaration from the Court that Swier Family Farms or Swier has a duty to indemnify Oh and Song for the costs, including interest and penalties associated with amending the tax returns.

### FOURTH CAUSE OF ACTION – VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (as to All Defendants)

60. Paragraphs 1 through 59 are incorporated herein as if set forth in full.

61. The actions of the Defendants constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961 in that:

    (a) the actions involved a predicate act, namely, extortion (18 U.S.C. § 1961(1); and

    (b) there were at least two acts of extortion which occurred after the effective date of RICO;

62. The actions of the Defendants violate 18 U.S.C. § 1962(b) in that the Defendants, through a pattern of racketeering activity, acquired and/or maintained, directly or indirectly, an interest in or control of an enterprise ("Dairy") which is engaged in, or the activities of which affect, interstate or foreign commerce. The purpose of the Defendants' acts of extortion was to gain control of the Dairy at a deeply discounted price by creating the immigration problem for the Plaintiffs, as described above, and then forcing them to liquidate their interests in the Dairy for an unconscionable price, far below the true market value of the Plaintiff's interests in the Dairy.

63. The actions of the Defendants violated 18 U.S.C. § 1962(c) in that the Defendants engaged in conduct of an enterprise through a pattern of racketeering activity which injured the Plaintiffs in their business or property, to wit:

    (a) Conduct – Defendants Swier and Laszlo participated in the operation or management of the Dairy;

    (b) Enterprise – Defendants Swier, Laszlo and their agents and advisors conducted an enterprise ("Dairy") with a common or shared purpose, with continuity of structure and personnel, and with an ascertainable structure distinct from that inherent in a pattern of racketeering;

    (c) Pattern – The letter and e-mail (Exhibits 5 and 6) constitute a pattern of extortion activity and failure to immediately withdraw these demands involves a distinct threat of long-term racketeering activity;

    (d) Racketeering Activity – Extortion is a predicate act under 28 U.S.C. § 1961(1); and

    (e) The Plaintiffs have suffered injury as a direct and proximate result of the racketeering activity in an amount to be determined at trial, as well as, the potential loss of their immigration status with USCIS.

64. As a direct and proximate result of the Defendants' violation of RICO, Oh and Song have been damaged in an amount to be determined at trial, including threefold the damages the Plaintiffs sustained as a result of the Defendants' conduct, the costs of suit, interest, and reasonable attorney's fees.

**WHEREFORE**, Oh and Song respectfully request the following relief:

(1) For a judgment in their favor on all counts above awarding general, special, treble, and exemplary damages;

(2) For a declaration from the Court permitting Oh and Song to expel Swier from the partnership and amend the tax returns;

(3) For a declaration from the Court that Swier or the partnership is liable for the costs associated with amending the tax returns;

(4) For attorney's fees and costs;

(5) For such further relief the Court determines just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues triable to a jury.

Dated this 20th day of August, 2009.

JANKLOW LAW FIRM, PROF. L.L.C.

By_____
William J. Janklow
Andrew R. Damgaard
1700 West Russell Street
Sioux Falls, SD 57104
Office: (605) 332-0101
Fax: (605) 332-2178
Email: william.janklow@janklowlaw.com
Email: andrew.damgaard@janklowlaw.com

*Attorneys for the Plaintiffs*